IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANDRA M. CARTER,

    Plaintiff,

v.

THE HARTFORD FIRE
INSURANCE CO.,

    Defendant.

CIVIL ACTION FILE

NO. 1:11-CV-04008-TWT-GGB

## **FINAL REPORT AND RECOMMENDATION**

In this employment discrimination action, Plaintiff Sandra M. Carter is bringing claims for under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Americans with Disabilities Act ("ADA") against her former employer, The Hartford Fire Insurance Company ("The Hartford"). This case is now before the Court on The Hartford's Renewed Motion for Summary Judgment or, in the Alternative, Motion to Dismiss (Doc. 10).[1] After review, I conclude that the claims raised by Carter in her first two charges with the Equal Employment Opportunity Commission ("EEOC") are barred by judicial estoppel, and that her remaining claims are subject to dismissal under

---

[1] The Hartford's renewed motion supersedes its original Motion for Summary Judgment or, in the Alternative, Motion to Dismiss (Doc. 7). Therefore, I **RECOMMEND** that the original motion be **DENIED AS MOOT**. The renewed motion incorporates portions of the original motion. Therefore, in ruling on the renewed motion, I have also reviewed the original motion and Carter's original response.

Fed.R.Civ.P. 12(b)(6). Accordingly, I **RECOMMEND** that summary judgment be **GRANTED** as to the claims in Carter's first two EEOC charges and that the motion to dismiss be **GRANTED** as to all of her remaining claims.

## I. Procedural Background

Carter's original complaint, filed in November 2011, raised claims for race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. (Doc. 1). The Hartford responded to the complaint by filing a Motion for Summary Judgment, or, in the Alternative, Motion to Dismiss. (Doc. 7). Carter amended her complaint in April 2012, adding claims for disability discrimination and retaliation under the ADA. (Doc. 8). The Hartford then filed a Renewed Motion for Summary Judgment or, in the Alternative, Motion to Dismiss. (Doc. 10). The motion has been fully briefed and now is ready for the Court's decision.

## II. Motion for Summary Judgment

I will first address The Hartford's motion for summary judgment. The Hartford argues that all of the claims in Carter's October 2007 and August 2009 EEOC charges are barred by judicial estoppel because Carter failed to disclose those claims in a bankruptcy proceeding. The Hartford does not allege judicial estoppel with respect to

the claims in Carter's August 2011 EEOC charge, as those claims arose after Carter's bankruptcy case ended.[2]

### A. Summary Judgment Standard

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The movant carries its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324; 106 S.Ct. at 2553 (quotation omitted); Fed.R.Civ.P. 56(c). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321,

---

[2]As discussed below, The Hartford moves to dismiss the remaining claims under Fed.R.Civ.P. 12(b)(6).

1326 (11th Cir. 2005). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### B. Relevant Facts

The facts relevant to The Hartford's summary judgment motion are undisputed. (See Doc. 7 at 2-5, Defendant's Statement of Undisputed Material Facts ("SMF"); Doc. 11 at 3-7, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts). In October 2007, Carter filed her first charge of discrimination with the EEOC. (SMF ¶ 1). She asserted that she had received a low performance evaluation and a written warning because of her race. (Id.).

Carter filed for bankruptcy in April 2009. (Id. ¶ 7). On the Statement of Financial Affairs attached to her bankruptcy petition, Carter was asked to list "all suits and administrative proceedings" to which she had been a party during the previous year. (Id. ¶ 9). She checked a box for "none." (Id. ¶ 10). On Schedule B of her bankruptcy petition, Carter was instructed to list "[o]ther contingent and unliquidated claims of every nature." (Id. ¶ 12). She again checked a box for "none." (Id. ¶ 13). Carter signed both the Statement of Financial Affairs and the Declaration Concerning Debtors'

4

Schedules, declaring under penalty of perjury that the information in those documents was true and correct. (Id. ¶¶ 11, 14). The bankruptcy trustee filed a "Report of No Distribution" explaining that Carter's estate did not include any non-exempt property and that her debts were accordingly scheduled to be discharged without payment. (Id. ¶ 15).

While Carter's bankruptcy case was pending, she sent an email to a Hartford employee in which she offered to settle her discrimination complaint in exchange for a promotion, a salary increase, and the payment of her student loans. (SMF ¶¶ 2-3). On August 11, 2009, Carter submitted a second EEOC charge, in which she reported that her supervisor had engaged in race discrimination and retaliation by giving her a final written warning. (Id. ¶ 4). Carter never updated her bankruptcy filings to disclose either her first or her second EEOC charge. (Id. ¶ 16). The day after she filed the second charge, the bankruptcy court discharged her debts and closed her bankruptcy case. (Id. ¶ 17).

Carter filed a third EEOC charge on August 2, 2011. (Doc. 9, Exh. A). That charge raised additional claims for race discrimination, disability discrimination, and retaliation. (Id.). The EEOC issued a right-to-sue letter on the first two charges on

5

August 23, 2011, and issued a right-to-sue letter on the third charge on April 20, 2012. (SMF ¶ 5; Doc. 9, Exh. B).

## C. Judicial Estoppel

The doctrine of judicial estoppel "precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1293 (11th Cir. 2003) (quotation omitted). "The doctrine exists to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (quotation omitted). Judicial estoppel applies when: (1) a party took an inconsistent position under oath in a prior proceeding; and (2) the inconsistent statement was "calculated to make a mockery of the judicial system." Id. at 1293-94 (quotation omitted). "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." Id. at 1294 (quotation omitted).

Here, it is undisputed that Carter took inconsistent positions under oath. In her bankruptcy filings, Carter declared, under penalty of perjury, that she was not a party to any administrative and judicial proceedings and did not have any contingent or

unliquidated claims. (See SMF ¶¶ 9-14). However, Carter's first EEOC charge was pending at that time. (See id. ¶¶ 1, 5, 7). Carter also failed to update her bankruptcy filings to include the second EEOC charge that she filed in August 2009. (See id. ¶¶ 4, 16). Thus, the first element of judicial estoppel is present.

This case turns on the second factor: whether Carter's inconsistent statements were "calculated to make a mockery of the judicial system." Barger, 348 F.3d at 1293-94 (quotation omitted). That factor applies where the party's inconsistent statements were "intentional contradictions" rather than the result of "simple error or inadvertence." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010) (quotation omitted).

Carter argues that The Hartford has failed to meet its summary judgment burden because it has not identified any specific evidence showing that she intentionally concealed her claims. (Doc. 11 at 8). However, The Hartford is not required to produce direct evidence of Carter's intent. In the bankruptcy-disclosure context, a court may infer an intent to conceal if the party knew about the undisclosed claims and had a motive for concealing them. See Barger, 348 F.3d at 1295 ("The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment.").

7

In this case, Carter had knowledge of the undisclosed claims, as she filed two EEOC charges raising those claims and tried to settle the 2007 charge while her bankruptcy case was ongoing. (See SMF ¶¶ 1-4). In addition, Carter had a motive to conceal her claims. By not revealing them to the bankruptcy court, she was able to obtain a "no asset" discharge under Chapter 7. (See id. ¶¶ 15, 17). Those facts give rise to an inference that Carter intentionally concealed her claims. See Barger, 348 F.3d at 1295. And Carter has failed to identify any other evidence that might create a triable issue of fact concerning her intent. Therefore, The Hartford is entitled to summary judgment.

Carter suggests that it would be premature to grant summary judgment at this stage of the case because no discovery has been taken. (Doc. 11 at 7-9). I conclude, however, that no discovery is needed to resolve the judicial estoppel issue. The only disputed question is whether Carter intentionally concealed her claims from the bankruptcy court or whether her omission was the result of "simple error or inadvertence." See Robinson, 595 F.3d at 1275 (quotation omitted). Any evidence relevant to Carter's intent should already be in her possession. No documents or testimony that Carter might obtain from The Hartford would have any bearing on whether she intentionally concealed her claims from the bankruptcy court. Thus, the

8

lack of discovery has not impaired Carter's ability to defend against the summary judgment motion.

Finally, Carter notes that she included allegations of race discrimination in her third EEOC charge. Therefore, she argues, she has "reestablished her right to claim the causes of action under Title VII and Section 1981." (Doc. 11 at 7). Carter is correct that judicial estoppel does not preclude her from raising claims of race discrimination based on events that took place after her bankruptcy case concluded. However, her new EEOC charge does not revive the claims that she failed to disclose in her bankruptcy proceedings. Those claims are barred by judicial estoppel because Carter could and should have disclosed them in her bankruptcy filings.

To summarize, the undisputed evidence shows that Carter took inconsistent positions under oath by failing to disclose her EEOC charges in her bankruptcy proceedings. The Hartford has also established that Carter's concealment was intentional because she knew about those claims and had a motive for concealing them. See Barger, 348 F.3d at 1295. Therefore, all of Carter's claims that arose before the conclusion of her bankruptcy case are barred by judicial estoppel. See Barger, 348 F.3d at 1293-94.

### III. Motion to Dismiss

### A. Rule 12(b)(6) Standard

9

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). The complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964 (quotation omitted, omission in original). Something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. Id. at 555, 127 S.Ct. at 1964-65.

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002), the Supreme Court held that a plaintiff does not have to plead a prima facie case under McDonnell Douglas[3] in order to state a claim for employment discrimination. Swierkiewicz remains good law even after the Supreme Court's decisions in Twombly and Iqbal. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citing Swierkiewicz's holding in a post-Twombly case);

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

see also Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012) ("The Supreme Court's subsequent decisions in Twombly and Iqbal did not alter its holding in Swierkiewicz.").[4] Thus, although an employment discrimination complaint must go beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, it need not allege each and every element of a prima facie case. Rather, the complaint must simply allege facts that give rise to a reasonable inference that the defendant discriminated or retaliated against the plaintiff. See id. (explaining that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### B. The Amended Complaint

Carter's amended complaint includes the following factual allegations. Carter began working as a claims examiner for The Hartford in 2004. (Doc. 8, Amended Complaint, ¶ 15). She filed an EEOC charge in October 2007 in which she asserted that the company's African-American employees did not receive the same opportunities for advancement as other employees. (Id. ¶ 16). She provided "specific details of the

---

[4]But see Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (concluding that Swierkiewicz has been abrogated by Iqbal and Twombly).

11

alleged discrimination" in a written statement to company officials. (Id. ¶ 17). Her statement noted that African-American employees were disciplined for attendance issues but that Caucasian employees with similar records were not. (Id. ¶ 18). Carter also explained that supervisor Christina Bell had made changes to incoming call volume that resulted in a loss of bonuses and advancement opportunities. (Id. ¶ 19).

On August 5, 2009, Carter received a final written warning from her supervisor, Dottie Tieslau. (Id. ¶ 20). Carter then filed a second EEOC complaint asserting that she had been subjected to race discrimination and retaliation. (Id. ¶ 21). A few months later, Carter received a package from The Hartford that included her employee records, the company's responses to her EEOC charges, and "other sensitive information." (Id. ¶ 22). That package "caused [Carter] to suffer emotional distress as she continued to work with individuals who had expressed negative opinions about her in the file." (Id. ¶ 23). She started attending counseling and was placed on medication to treat "depression, mood swings, and other mental health symptoms." (Id). She also took "intermittent" leave under the Family and Medical Leave Act ("FMLA") in order "to further address her mental health symptoms." (Id. ¶ 24).

In April 2011, Carter asked manager Richard Lindsay for a quarterly review "so that she could better determine the requirements for being promoted." (Id. ¶ 25). However, Lindsay told her not to ask for an interim review and issued her a behavioral

12

warning. (Id. ¶ 26). On July 21, 2011, Carter's supervisor, Tieslau, walked by her desk and tried to start a conversation. (Id. ¶ 27). However, Carter "was feeling emotionally despondent at that time and signaled that she was not interested in engaging in a conversation." (Id.). A few minutes later, Tieslau called Carter into her office and asked her what was wrong. (Id. ¶ 28). Carter answered that she (Ms. Tieslau) was the reason for Carter being emotionally distraught. (Id.). Tieslau ordered Carter to go home for the day. (Id. ¶ 29). The Hartford terminated Carter's employment the following day without giving her a reason for the separation. (Id. ¶ 30).

### C. Race Discrimination Claims

As noted above, all of the claims that Carter failed to report in her bankruptcy filings are barred by judicial estoppel. Therefore, in analyzing The Hartford's Motion to Dismiss, I will consider only those claims that arose after August 12, 2009, the date of the bankruptcy court's discharge order. (See SMF ¶ 17). With respect to Carter's claims for race discrimination, the complaint notes that: (1) she received a behavioral warning in April 2011; and (2) she was terminated in July 2011 without any explanation. (See Complaint ¶¶ 25-26, 30). However, the complaint does not include any factual allegations suggesting that either of those incidents had anything to do with Carter's race. (See id. ¶¶ 25-30). Accordingly, Carter has failed to state a claim for race discrimination.

13

### D. Disability Discrimination Claim

The ADA prohibits an employer from discriminating against an employee on the basis of a disability. 42 U.S.C. 12112(a). An employee is considered to be disabled if she: (1) has "a physical or mental impairment that substantially limits one or more major life activities;" (2) has "a record of such impairment;" or (3) is regarded by her employer as having such an impairment. 42 U.S.C. § 12102(1). In this case, Carter has not sufficiently alleged that she was disabled or that The Hartford perceived her as being disabled. She asserts that she experienced emotional distress, underwent counseling, and was placed on medication to treat "depression, mood swings, and other mental health symptoms." (Complaint ¶ 23). However, Carter has not alleged that her symptoms prevented her from performing any major life activities.

The only major life activity that could possibly be implicated by Carter's complaint was her ability to work. (See Doc. 8, Amended Complaint ¶¶ 23-24, 27). An employee is substantially limited in the major life activity of working only if she is unable to perform "either a class of jobs or a broad range of jobs in various classes" as a result of her disability. Pritchard v. S. Co. Servs., 92 F.3d 1130, 1133 (11th Cir. 1996). Here, although Carter had to take "intermittent FMLA leave" to address her mental health symptoms, (see Complaint ¶ 24), there is no indication that her condition precluded her from performing her job on a day-to-day basis. Because Carter has not

14

sufficiently alleged that she suffers from a disability, she has failed to state a claim for disability discrimination.

### E. Retaliation Claims

Carter asserts that The Hartford retaliated against her by: (1) writing her up after she filed her first EEOC charge; and (2) terminating her "after badgering [her] into admitting that her Manager was a contributing factor to [her] fragile mental state." (Doc. 8, Amended Complaint ¶ 47, 20-21, 27-30). Carter raised the first claim in her August 2009 EEOC charge. (See id. ¶ 21). Because Carter failed to disclose that claim in her bankruptcy petition, it is barred by judicial estoppel, and the Court need not consider whether it states a claim for relief.

Carter's second assertion—that she was terminated after telling her supervisor that the supervisor was the cause of her emotional distress—fails to state a claim for retaliation under the ADA because Carter has failed to allege that she engaged in any conduct protected by that statute. Accusing a supervisor of causing emotional distress does not amount to a complaint of disability discrimination. Accordingly, Carter's complaint fails to state a claim for retaliation under the ADA.

### IV. Conclusion

15

For the reasons stated above, I conclude that Carter is judicially estopped from pursuing the claims in her first two EEOC charges because she failed to disclose those claims in her bankruptcy filings. Therefore, I **RECOMMEND** that The Hartford's Renewed Motion for Summary Judgment (Doc. 10) be **GRANTED** with respect to those claims. All of the remaining claims in Carter's amended complaint fail to state a claim upon which relief may be granted. Accordingly, I **RECOMMEND** that the Hartford's Renewed Motion to Dismiss (Doc. 10) be **GRANTED** and that Carter's post-bankruptcy claims be **DISMISSED WITH PREJUDICE**. Finally, I **RECOMMEND** that The Hartford's original Motion for Summary Judgment, or, in the Alternative, Motion to Dismiss (Doc. 7) be **DENIED AS MOOT**.

IT IS SO ORDERED this 17th day of September, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)